Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Edward A. Bobrick |
|---|---|---|---|
| **CASE NUMBER** | 74 C 3268 and 75 C 3295 | **DATE** | 3/9/2000 |
| **CASE TITLE** | Alliance to End Repression vs. City of Chicago, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Report and Recommendation regarding motion of defendant City of Chicago to dismiss the petition of petitioner Raymond Risley to enforce the consent decree in Alliance to End Repression, et al vs. City of Chicago, et al No. 74 C 3268 is hereby submitted to Judge Gottschall. This Court recommends that the respondents' motion to dismiss the petition be granted.

*Edward A. Bobrick*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAR 10 2000 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 3255 |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | |
| | | 3/9/2000 | |
| TH ✓ | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | TH mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIANCE TO END REPRESSION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 74 C 3268 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AMERICAN CIVIL LIBERTIES UNION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 75 C 3295 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

HONORABLE JOAN GOTTSCHALL, JUDGE
UNITED STATES DISTRICT COURT

HONORABLE JUDGE:

### REPORT AND RECOMMENDATION
### of Magistrate Judge Edward A. Bobrick

Before the court is the motion of defendant City of Chicago to dismiss the petition of petitioner Raymond Risley to enforce the consent decree in *Alliance to End Repression, et al. v. City of Chicago, et al.*, No. 74 C 3268.

# I. BACKGROUND

Petitioner served as a high-ranking Chicago police officer from 1991 to 1999. He resigned after having been passed over a second time for the position of superintendent. Shortly thereafter, he filed the instant petition. According to petitioner, police department officials believed he was responsible for certain leaks to the media during an investigation into police department corruption. In December of 1995, an article appeared in the local press regarding allegations that two police officers had stolen a million dollars from a drug courier in October. Although petitioner claims he did not share information with the press, it is his position that the department acted on the belief that he did and violated the consent decree in two ways. First, he contends that the department conducted an unlawful investigation into his activities. Second, he alleges that department officials retaliated against him by, in essence, shunning him. The City now moves to dismiss the petition arguing that the petitioner has failed to articulate a claim under the terms of the consent decree. In recommending dismissal of this petition, however, we need not even delve that far in our analysis.

# II. ANALYSIS

## A. Timeliness of Petition

The petition before the court is replete with flaws that dictate its dismissal. At the outset, petitioner has a problem with the timing of his petition. According to his allegations, he became aware of the purported unlawful investigation in February of 1996.

He filed this petition over three-and-a-half years later, on October 25, 1999. Under the applicable case law, he simply waited to long to pursue his claims under the consent decree.

The consent decree originated, essentially, from First Amendment claims under 42 U.S.C. § 1983. While neither the decree, nor contempt proceedings brought to enforce such decrees, have specific periods of limitations, case law provides for borrowing a period of limitations from the most closely analogous statute. *Smith v. City of Chicago*, 769 F.2d 408, 411-12 (7th Cir. 1985). Here, the most generous statute of limitations for petitioner's First Amendment claims would be the two-year period applicable to a §1983 limitation. 769 F.2d at 408. The petitioner fell far short of meeting the two-year deadline for pursuing his claims under the consent decree. His petition is clearly untimely and must therefore be dismissed.[1] Even if it were timely, however, it should still not be allowed to stand.

---

[1] Petitioner argues that no limitations period should apply, citing a previous Report and Recommendation the Magistrate Judge issued in *Alliance* litigation. There, the City sought to apply a 180-day period to petitions to enforce the consent decree, ostensibly because the petitioners had filed within the two-year period. The petitioner also cites the Report and Recommendation out of context, ignoring the first two premises under which we rejected a 180-day period, namely that the case was not a Shakman case and was not analogous to a Title VII action. In any event, the petition suffers from more serious flaws than tardiness.

3

## B. <u>Spurious Allegations</u>

Before we examine the petition in light of the City's arguments for dismissal, we must briefly address petitioner's allegations regarding the actions taken against him as a result of the mistaken belief he had shared information with the press. One, in particular, is very troubling, and calls into question the credulity of the entire petition. According to petitioner, as chief of the organized crime division, he should have been assigned to high-profile events, particularly the World Cup soccer matches. (*Raymond Risley's Petition to Enforce Consent Decree* ("*Petition*"), ¶ 103). Petitioner claims that he had submitted specific written recommendations for the World Cup. (*Petition*, ¶ 104). Nevertheless, he complains that he did not receive an assignment for the event, purportedly because department officials thought he was the leak in the department. (*Petition*, ¶ 106-107). The allegations are troubling because the World Cup took place in the summer of 1994[2], more than a year *before* petitioner became chief of the organized crime division (*Petition*, ¶ 45), and about sixteen months before the narcotics theft occurred. (*Petition*, ¶ 48). If petitioner was spending time working on security recommendations for an event that had occurred the previous year, we can see why his career may not have gone the way he would have liked. Petitioner's allegations, then, would appear to be fabricated–disturbing conduct from a law enforcement officer and his attorney. Under Fed.R.Civ.P. 11, an attorney who presents a pleading to the court certifies that:

---

[2] Chicago's Soldier Field hosted games from June 17 to July 2, 1994.

4

> to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation . . .

Fed.R.Civ.P. 11(b)(3). At this time, it would appear that petitioner's counsel has engaged in sanctionable conduct by violating this rule.[3]

Although such conduct is inexcusable, perhaps petitioner undertook it in an effort to make the purported actions taken against him seem a bit more dire than they were. Actually, "dire" is perhaps not the word to describe petitioner's allegations regarding the actions taken against him. Indeed, they are such that it is difficult to take the petition seriously, credibility problems aside. For example, the petitioner complains that "opportunities to exhibit his command and professional skills were denied him," and "throughout the department . . . he was not held in high regard." (*Petition*, ¶¶ 108-109). Yet, in the very next paragraph, petitioner notes that he was a finalist for the position of superintendent of the police department. (*Petition*, ¶ 110). That would not seem to be much of a fall from grace. If petitioner really were not held in high regard or allowed to demonstrate his abilities, it is incongruous that he would be a finalist for the highest position in the department. There is such a thing, we note, as pleading oneself out of

---

[3] The ACLU insisted upon filing its own memorandum in support of the petitioner's allegations. It is not clear, however, whether this endorsement of the petitioner's fabrications would also constitute sanctionable conduct under Rule 11.

5

court. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999). Here, petitioner undermines his own allegations by taking the trouble to taut his successes. One allegation of the consequences the City's conduct had toward his career is often undermined in a subsequent allegation. Coupling these flaws with the fabrications we find sufficient circumstances to dismiss the petition.

But that's not all. The petitioner also complains that high-ranking department officials "maintained a significant distance" from petitioner at department events. (*Petition*, ¶ 109). He takes trouble to detail the following:

> In December of 1997, [petitioner] attended a luncheon CPD hosts annually. All CPD command personnel, the Mayor of the City of Chicago, certain alderman and high ranking federal, state and county law enforcement personnel also attend. On the day of the luncheon, [petitioner] received a phone call from Gerard Mahnke ("Mahnke"), Administrative Assistant to the Superintendent, instructing him that he was assigned to sit at Table 6 for the luncheon. [Petitioner] informed Mahnke that the event has [sic] always been collegial and that seating arrangements, beyond those at the Superintendent's table, had always been informal. Mahnke responded that this year, table assignments had been made. At the luncheon, [petitioner] discovered that no other table assignments had been made and that those assigned to Table 6 were personnel that [first deputy superintendent] Townsend personally disliked. That incident caused [petitioner] and some others at the table significant stress.

(*Petition*, ¶¶ 97-102). After a review of the petition, fabrications aside, we come away with the perception that the petitioner seeks redress for not getting to sit with the cool kids in the cafeteria.

What we have before us then, are a combination of allegations that are patent fabrications, allegations that are undermined within the petition itself, and frivolous or *de*

6

*minimus* claims. Any one of these flaws, but certainly the combination of all three, would allow for dismissal of the petition. Worse than failing to present adequate, or even true, claims for relief, this type of filing needlessly takes the court's attention away from the claims of individuals that deserve consideration. Such matters wait, unattended, while matters such as the instant petition tie up resources. Accordingly, without even considering the City's arguments, we find that this petition must be dismissed.

### C. City's Arguments

While we do not base our recommendation of dismissal on the City's arguments alone, we will briefly evaluate the challenges to the petition in light of the terms of the consent decree for the sake of thoroughness. The decree clearly states that it applies only to investigative activity that is directed at First Amendment conduct. 561 F.Supp. at 561. One can search the petition in vain for a mere mention of the petitioner engaging in any First Amendment conduct and being retaliated against as a result. In fact, the petitioner contends that he *did not engage* in any First Amendment conduct. (*Petition*, ¶¶ 2, 70, 107, 110). It was actually another individual who shared information with the media. (*Petition*, ¶ 70). The petition is directed solely at the speculation that police department officials were laboring under *the misconception* that petitioner was engaging in First Amendment conduct, either by leaking stories to the press or cooperating with federal authorities. (*Petition*, ¶ 2, 93, 107 110). Without an allegation that petitioner was engaging in, or attempting to engage in, First Amendment conduct, however, we fail to

7

see how petitioner could hope to invoke any of the protections afforded by the consent decree.[4]

This should come as no surprise to the petitioner. The First Amendment claims that originally gave rise to the consent decree were brought under 42 U.S.C. § 1983. When interpreting First Amendment claims under that statute, courts have required that there be an exercise of a constitutionally protected right. In *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568 (1977), the Supreme Court made it clear that "the burden was . . . upon [plaintiff] to show that his conduct was constitutionally protected, and that his conduct was a 'substantial factor' or . . . that it was a 'motivating factor'" in the defendant's decision. 429 U.S. at 287, 97 S.Ct. at 575. Here, there is no allegation of any conduct whatsoever.

Two Seventh Circuit cases are instructive. In *Barkoo v. Melby*, 901 F.2d 613 (7th Cir. 1990), an employee was terminated after the publication of a newspaper article. The court held that, to the extent the employee alleged that her employer retaliated against her because they *thought* she engaged in First Amendment activity, she had no claim for a deprivation of her First Amendment rights. 901 F.2d at 619. According to the court, there was no violation of the right to freedom of speech "when the speech at issue never

---

[4] It would appear that the only allegation of first Amendment conduct is that petitioner contacted a member of the broadcast media to object to a story. (*Petition*, ¶ 66). He does not allege that he suffered any adverse actions as a result.

8

occurred." *Id.* Similarly, in *Kyle v. Morton High School*, 144 F.3d 448 (7th Cir. 1998), the court upheld the dismissal of a complaint for a First Amendment violation where the plaintiff failed to allege any speech or conduct that led to his termination. 144 F.3d at 454. The common thread running throughout these cases is there is no cause of action when there is no First Amendment activity.

Here, the petitioner not only fails to allege any First Amendment activity, he actual disclaims engaging in any First Amendment activity. Like § 1983, the statute this case was originally brought under, the consent decree is designed to protect First Amendment activity. Where there is none, we cannot imagine how the decree can be brought into play. In addition, the decree states that investigative activity is directed at First Amendment conduct when it does or foreseeably will: include the collection of information about First Amendment conduct; have as a subject or target a person engaging in First Amendment conduct and the investigative activity relates to that conduct; or interferes with First Amendment conduct. 561 F.Supp. at 561-62. Petitioner has not made and, apparently, cannot make, any such allegations. Accordingly, it is clear that the petition is totally unfounded and must be dismissed.

Indeed, the petition is so flawed that, even if petitioner *had actually engaged* in the activity he alleges the police department officials suspected he did, he would still not have a claim under the consent decree. The decree defined First Amendment conduct as follows:

conduct protected by the rights [sic] under the First Amendment of the Constitution of the United States to [sic] freedom of speech, press, assembly, petition and religion, including but not limited to the following rights:

> the right to hold ideas or beliefs concerning public or social policy, or political, educational, cultural, economic, philosophical or religious matters;
>
> the right to communicate or receive such ideas or beliefs, publicly or privately, orally, in writing or by symbolic means;
>
> the right to associate and assemble publicly or privately with other persons concerning ideas or beliefs about public or social policy, or political, educational, cultural, economic, philosophical or religious matters (but not a right to associate or assemble for purposes unrelated to the right to hold and express such ideas or beliefs);
>
> the right to advocate, for purposes related to such ideas or beliefs, "the use of force or of law violation, except where such advocacy is directed to inciting or producing imminent lawless conduct and is likely to incite or produce such action," Brandenburg v. Ohio, 395 U.S. 444 (1969);
>
> \* \* \*
>
> the right to advocate alternative systems of government;
>
> the right to petition the government or government officials for redress of grievances; and
>
> the right to associate for the purpose of seeking and giving legal advice as well as advancing litigation.

561 F.Supp. at 562. Of course, it is a matter for mere speculation, but it is far from clear how, exactly, petitioner might force discussions of internal departmental affairs into any of these categories of First Amendment activity.

Beyond that, we note that petitioner is-or was, for the relevant period-a government employee. As such, his case-if he had one-is subject to different analysis than if he were a private individual. The government as employer has far broader powers, in the First Amendment context, than the government as sovereign. *Waters v. Churchill*, 511 U.S. 661, 671, 114 S.Ct. 1878, 1886 (1994). When the government employer is a police department, as here, courts recognize that a even more significant interest than the typical government employer in regulating the speech activities of employees. *Kokkonis v. Ivkovich*, 185 F.3d 840, 845 (7th Cir. 1999). The consent decree itself recognizes these heightened concerns. While it provides that no city agency shall investigate or prosecute a person solely because of First Amendment conduct, it provides an exception for the discipline of public employees, like petitioner. 561 F.Supp. at 562.[5] The agency in question here, the police department, has specific regulations covering dissemination of information to the media. Thus, although we can only speculate due to the hypothetical nature of petitioner's allegations, it is apparent that even the type of speech petitioner claims *he did not engage in,* would not fall under the protection of § 1983 or the consent decree.

## III. CONCLUSION

---

[5] Section 2.1 provides: "[n]o agency or agent of the City of Chicago shall investigate or prosecute a person, solely because of the person's First Amendment conduct, or selectively for political, religious, or personal reasons (except as permitted by law in the discipline of public employees)."

11

The petition before the court, then, hardly merits the time taken to consider it. It seeks First Amendment protection for speech that never occurred. It invokes a consent decree that does not cover the type of conduct at issue–conduct which did not occur, in any event. Distressingly, some of the allegations regarding action taken against the petitioner are fabrications. Others are contradictory. Still others are laughable. Accordingly, since it is utterly without substance, the petition must be dismissed.

For the foregoing reasons, it is hereby recommended that the respondents' motion to dismiss the petition be GRANTED.

Respectfully submitted,

*Edward A. Bobrick*
**EDWARD A. BOBRICK**
**United States Magistrate Judge**

**DATE:** March 9, 2000

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. Fed.R.Civ.P. 72; *Thomas v. Arn*, 474 U.S. 140 (1985); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

| COPIES TO: | Roger S. Hutchinson<br>47 W. Polk Street<br>Dearborn Station, 3rd Floor<br>Chicago, IL 60605 | Patrick Johnson<br>Asst. Corporation Counsel<br>30 N. LaSalle Street, 9th fl<br>Chicago, IL 60602 |

| COPIES TO: | Richard Gutman<br>55 Warfield Street<br>Montclair, New Jersey 07043-1116 | Lawrence V. Jackowiak<br>29 S. LaSalle Street<br>Suite 945<br>Chicago, IL 60603 |
|---|---|---|
| | Edward W. Feldman<br>Miller, Shakman, Hamilton,<br> Kurtzon & Schlifke<br>208 S. LaSalle Street, Ste. 1100<br>Chicago, IL 60604 | |