Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 74 C 3268 & 75 C 3295 | **DATE** | May 25, 2000 |
| **CASE TITLE** | Alliance to End Repression v. City of Chicago - 74 C 3268<br>American Civil Liberties v. City of Chicago - 75 C 3295 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of City of Chicago for Interpretation of the 1982 <u>Alliance</u> Consent Decree is denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAY 2 6 2000 | |
| ✓ | Docketing to mail notices. | date docketed | 3279 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RJ | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALLIANCE TO END REPRESSION, et al., )
)
            Plaintiffs, )
v. ) No. 74 C 3268
) 75 C 3295
CITY OF CHICAGO, et al., )
) Judge Joan B. Gottschall
            Defendants. )

## MEMORANDUM OPINION AND ORDER

### Background

The City of Chicago has asked the court for an interpretation of the 1982 *Alliance* consent decree that has governed its investigative practices for nearly two decades. The consent decree stems from two prior class action suits in which a number of organizations claimed that the City and its agents violated their First Amendment rights, primarily through various police practices. The decree provides extensive regulations intended to govern the City's investigation of First Amendment conduct by organizations and individuals in Chicago. It also prohibits harassment of, disruption of, or interference with persons because of their First Amendment conduct.

The City's current motion for interpretation stems from Judge Williams' earlier denial of the City's motion to modify the decree. *See Alliance to End Repression v. City of Chicago*, 66 F. Supp.2d 899 (N.D. Ill. 1999). In its motion to modify, the City had complained "of the significant burdens continued compliance and enforcement places on [its] ability to serve and protect Chicago citizens." *Id.* at 912. Judge Williams concluded "that much of what the City believes is prohibited is not," and that much of the City's proposed investigative activity is permissible under the decree. *Id.* at 912-13. She also invited the parties, to the extent that they still had questions, "to submit a motion for an interpretation of the consent decree that is directed at *specific* provisions of the decree

as well as *proposed conduct.*" *Id.* at 913 (emphases in original). In response to this invitation, the City has served on the court thirteen interrogatories that call for sweeping interpretations of the consent decree based on hypothetical scenarios. Specifically, the City has asked the court to answer the following questions:

> Where there is a legitimate governmental purpose unrelated to the suppression of First Amendment activity, can the City permissibly record information about the identity of persons engaged in overt advocacy activity, as well as their statements, without further restriction?
>
> As part of an investigation into an organization reasonably suspected to be a criminal street gang as that concept is defined in Illinois law . . . may the City collect identifying information about any individual or organization that associates with the gang and retain it for further use without additional restriction?
>
> Is an investigation of individuals or groups that have advocated hatred based on race, color, ethnicity, creed, religion, gender, or sexual orientation – when a crime is committed against members of a particular group that the subject group or individual has targeted in its own statements – directed toward First Amendment conduct and therefore governed by Part 3 [of the decree] and, if so, can its results be retained for future use as intelligence once the investigation concludes?
>
> When the City is permitted to investigate a hate group, can the City collect information about the identity of individuals who are members of or who associate with the hate group, without first obtaining information that each individual about whom any information is collected has committed, is committing, or is about to commit a crime?
>
> Can information about the views, beliefs, and statements of groups or individuals collected in the course of a lawful criminal investigation of a hate group, including First Amendment information, be retained after the investigation has been closed and reasonable suspicion has dissipated so that it may be consulted for its intelligence value in future investigations?
>
> When the City knows or has reasonable suspicion that a person committed or was involved in the commission of a hate crime, can the City investigate any other individual or group because they have associated with the subject and share views that may have motivated the crime, and, if so, may the City retain the results of such an investigation so that they may be consulted in future investigations?

2

When a hate crime has been committed and the City is attempting to pursue an investigation but has yet to develop reasonable suspicion with respect to any particular subject of investigation, may the City question or otherwise investigate individuals or groups that have expressed views sympathetic to the commission of such crimes and, if so, can the results of such an investigation be consulted in future investigations?

When the City learns that individuals or groups advocating racial or ethnic hatred are active within its borders, may it monitor the activities and document the membership of those groups, including collecting their literature or downloading material from their web sites, and retain the information acquired for intelligence purposes, absent reasonable suspicion that these individuals or groups are committing, have committed, or are about to commit a crime?

May City employees record statements that occur in the media or in public places in order to learn and record the views of public officials, constituents, and others?

May the City videotape or photograph First Amendment gatherings in order to deter police misconduct and to document whether such misconduct has occurred, and use such videotapes or photographs in future criminal or civil proceedings?

May the City videotape or photograph First Amendment gatherings for purposes of training police officers on crowd control in such settings?

May the City videotape or photograph non-First Amendment gatherings and retain such videotapes or photographs for purposes of training police officers on crowd control in such settings?

May the City participate in inter-jurisdictional sharing of intelligence information, such as VITAL [Violent Crime Information Tracking and Linking]?

## Analysis

"The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Because a federal court does not have the power to "render advisory opinions," the court's "judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)). The "case or controversy"

3

requirement "keeps federal courts in the business of resolving existing legal disputes and out of the business of offering advice on the legality of a proposed course of action." *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994).

The Seventh Circuit recently underscored the applicability of these principles to a court's continuing enforcement of a consent decree. In *United States v. Accra Pac, Inc.*, 173 F.3d 630, 633 (7th Cir. 1999), the court rejected the argument that "a court's authority to superintend the implementation of a consent decree dissolves all obstacles to judicial review." The court reasoned that:

> [D]istrict judges can't suspend the application of Article III or grant themselves the power to issue advisory opinions one case at a time, and litigants can't stipulate to the enlargement of federal jurisdiction. A case or controversy must be present at every moment of the litigation. That's the point of the mootness doctrine, which is as applicable to consent decrees as to other judgments.

*Id.*

One aspect of the Article III inquiry is a matter's ripeness. "Cases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992). In evaluating the ripeness of a claim, the court must weigh "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)).

In *Massachusetts Ass'n of Afro-American Police, Inc. v. Boston Police Dep't*, 973 F.2d 18 (1st Cir. 1992), the First Circuit held that a federation's challenge to a consent decree's hiring provisions was not ripe because the point at which those provisions would affect the federation's members had not yet been reached. The court observed that, in evaluating a matter's ripeness,

4

"[t]he central concern is whether the case involves a merely hypothetical dispute." *Id.* at 20. The first ripeness criterion – fitness for review – depends on "whether the claim involves uncertain and contingent events that may not occur as anticipated, or indeed may not occur at all." *Id.* The court found that the federation's challenge to the consent decree was based on an event – a vacancy for a promotion beyond the number of promotions exempted from the consent decree – that may not occur as anticipated, or at all. *Id.* In such circumstances, the "claim is too hypothetical to be fit for judicial review." *Id.* at 21. The appellant also failed the second ripeness criterion – hardship of withholding judicial consideration – because "the injury it alleges cannot yet be proven and may never occur." *Id.*

Similarly, in *Wilmington Firefighters Local 1590, Int'l Ass'n of Firefighters v. City of Wilmington*, 824 F.2d 262 (3d Cir. 1987), the Third Circuit rejected a challenge to an allegedly discriminatory promotions list compiled in 1984. A group of firefighters claimed that the City of Wilmington had adopted a racially discriminatory scoring system for the fire department's promotional examination, leading to the discriminatory promotions list. *Id.* at 263. In an earlier consent decree, the city had agreed that its promotional examinations would not have a disparate impact on minorities. *Id.* The district court enjoined the promotion of any firefighters based on the 1984 list. *Id.* at 265. Prior to the appeal of the order, the 1984 promotions list expired, and was replaced by a new list based on new examinations. *See id.*

On appeal, the city argued that the controversy was moot in light of the expiration of the 1984 promotions list. *See id.* The firefighters insisted "that a live controversy exists because one purpose of the suit is to prevent the city from restructuring future promotional rankings in accordance with its erroneous interpretation of the . . . consent decree, and the certified class

includes firefighters whose rank on future lists may be affected by the defendants' interpretation of its obligations under the . . . consent decree." *Id.* The court rejected this argument, reasoning that "[a]ny order of this court would merely serve to advise the parties as to the legality or illegality of the specific set of procedures adopted to yield the 1984 list, a list which is no longer relevant to the legal relationship between the parties." *Id.* at 266. As for those firefighters whose future rank would depend on the city's interpretation of the consent decree, the court observed that "[i]t is purely a matter of conjecture whether the city's interpretation of the consent decree would cause it to . . . adopt the same ranking procedures challenged here." *Id.* Because the court would be left to "hypothesize" as to the effects the city's future interpretation might have, the court held that "[n]o justiciable controversy remains." *Id.*

Even a cursory review of the list of questions submitted by the City reflects the practical wisdom behind Article III's "case or controversy" requirement. If the court were to answer the City's proffered interrogatories, it would be opining not on the facts of a particular dispute, but on the City's abstract discomfort with the consent decree's prohibitions. The City is not asking the court to pass judgment on alleged violations of the decree or to apply a specific decree provision to a past or impending event. Rather, the City proposes that the court issue edicts on the applicability of the decree to various ill-defined areas of conduct. Many of the questions do not even appear to be tied to a specific provision of the consent decree, and at least one – whether police may videotape or photograph non-First Amendment gatherings – has no apparent relation to the decree. Hypothetical questions beget hypothetical answers. Under Article III, this court cannot be in the business of issuing hypothetical answers.

Underscoring the hypothetical nature of the disputes alluded to in the City's motion is the

fact that there is no dispute whatsoever among the parties as to how several of the City's questions should be answered. Even under the City's abstract framing of the questions, plaintiffs agree with several of the City's proposed answers. This alone suggests the fundamentally misguided nature of the City's motion. At the very least, such questions to the court should arise from an unavoidable realization that the parties are at loggerheads over the permissibility of a proposed course of conduct. Here, the City appears to have brainstormed ways in which the consent decree might affect its investigation practices in the future, and submitted a list of corresponding questions to the court, without ever having asked plaintiffs if they disputed the City's interpretations.

This failure to consult has contributed to the broad-brush nature of the City's questions, as well as plaintiffs' responses. Because the parties did not narrow the areas of real dispute, they are lost in a muddle of peripheral disagreements and stylistic, but not substantive, differences. Even as to those questions where there is a discernible dispute, the contrasting interpretations resemble opening submissions in a negotiation, not insurmountable obstacles to workable agreement. Without question, the murkiness of plaintiffs' responses also stems from the hypothetical nature of the City's questions. Because the questions are not based on accessible facts, plaintiffs' responses are necessarily broad enough to account for various contingencies and interpretations – regardless of how precisely the City has attempted to craft the questions. Where the court has been asked by the City "to adopt an interpretative guideline that will help clarify the proper application" of the decree's terms (City's Mtn. at 4), it is no wonder that plaintiffs' responses are uncertain and unhinged from any discernible facts. As the ACLU recognizes, "The City's sweeping, undefined and hypothetical questions make answers difficult." (ACLU Resp. at 1-2) The court has not been

7

asked to settle a dispute, but to enter into a theoretical debate.[1]

Under these circumstances, the City's motion fails both ripeness criteria set forth by the Supreme Court in *Abbott Laboratories*. The City's questions – due to their hypothetical nature and disconnection from any real dispute – are uniquely unfit for judicial resolution. Further, withholding judicial consideration at this stage would not pose undue hardship to the City. Certainly, it would be more convenient for the City to have judicial approval of its consent decree interpretations before investing time and money into implementing those interpretations as tangible policies or practices. The City is hard-pressed to claim true hardship, however, where it has not even bothered to check to see if plaintiffs disagree with its interpretations. In any event, it is not the business of this court to rubber-stamp the City's long-term plans for investigation and law enforcement. Given that the City has not undertaken any of the conduct that it fears is proscribed by the consent decree – and plaintiffs have not blocked the City's efforts to undertake such conduct – the City cannot show any injury from the court's failure to intervene at this stage. Where plaintiffs prevent or threaten to prevent the operation or implementation of a specific policy or practice, the City can seek relief in this court.

The court takes the City's motion to be a well-intentioned attempt to guard against violations of the consent decree, and realizes that the motion stems from Judge Williams' invitation to seek judicial interpretation of disputed "specific" decree provisions. The City's motion, however, goes

---

[1] There is one matter raised in the City's motion that is based on a verifiable factual dispute between the parties. The City suggests that "[i]n light of the recent petition to enforce filed by the ACLU involving City note-taking of public conversations, there is an obvious need for clarification of whether and when the City may listen to and take notes on public statements without violating the Decree." (City's Mtn. at 12) To the extent that the relevant decree provisions must be interpreted to resolve the specific factual allegations raised by the ACLU, they will be – in the context of the enforcement proceeding.

beyond any reasonable scope of Judge Williams' invitation, which cannot, of course, be read as having lifted the requirements of Article III. Where an interpretation of the consent decree is required to resolve a real dispute between the parties based on real facts and an actual or threatened injury, the court will be ready and willing to intervene. Until then, the questions are not ripe for judicial review.

## Conclusion

Because the City's motion for interpretation seeks an advisory opinion from this court, the motion is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: May 25, 2000