Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 74 C 3268 & 75 C 3295 | **DATE** | May 25, 2000 |
| **CASE TITLE** | Alliance to End Repression v. City of Chicago - 74 C 3268<br>American Civil Liberties v. City of Chicago - 75 C 3295 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court denies the *Alliance* Plaintiffs' Attorney's Fees Motion for Monitoring Compliance With FBI Consent Decree, but not for the reasons stated in the Magistrate Judge's December 10, 1999 Report and Recommendation. Plaintiffs' Objections to the Magistrate Judge's Report are granted in part and denied in part.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALLIANCE TO END REPRESSION, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 74 C 3268 |
| ) | 75 C 3295 |
| CITY OF CHICAGO, et al., ) | |
| ) | Judge Joan B. Gottschall |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

### Background

Before the court are the *Alliance* plaintiffs' objections to a Report and Recommendation (R&R) issued by Magistrate Judge Bobrick on December 10, 1999. The Magistrate Judge denied plaintiffs' request for attorney's fees arising from monitoring and enforcement work done pursuant to a consent decree entered into between plaintiffs and the FBI in 1980. *See Alliance to End Repression v. City of Chicago*, 91 F.R.D. 182 (N.D. Ill. 1991). The ACLU, another party to the FBI consent decree, filed an enforcement petition alleging that the FBI had violated the decree by interrogating Arab-Americans during the Gulf War. The ACLU and the FBI subsequently entered into a settlement agreement regarding the ACLU's allegations.

The *Alliance* plaintiffs seek their attorney's fees for work relating to the Arab-American enforcement proceeding initiated by the ACLU. Part of this work stems from the FBI's refusal to serve the *Allliance* plaintiffs with pleadings in that enforcement proceeding, and the *Alliance* plaintiffs' successful motion to compel service. The *Alliance* plaintiffs also seek fees for their work on a memorandum submitted in opposition to the FBI's objections to a Report and Recommendation by Magistrate Judge Lefkow regarding the enforcement petition. The remainder of the fees appears to stem from general "monitoring" of the enforcement proceeding. Magistrate Judge Bobrick recommended that the *Alliance* plaintiffs' fee petition be denied

because they failed to establish that they were prevailing parties in the enforcement proceeding and because they failed to establish that their monitoring work was reasonable and necessary. The court agrees that plaintiffs' fee petition should be denied, but for a different reason.

## Analysis

At the outset, the FBI argues that the *Alliance* plaintiffs' motion for fees is untimely because it was not filed within 90 days after the FBI and the ACLU settled the underlying proceeding, as required by Local Rule 54.3. According to the FBI, the *Alliance* plaintiffs' "claim to 'prevailing party' status must depend on the settlement agreement between the ACLU and the FBI." (FBI Br. in Supp. of Mag. Report at 6) As explained below, this presumption is wrong. Plaintiffs seek attorney's fees based on their "prevailing party" status in winning the initial consent decree – and their subsequent monitoring of the FBI's compliance with that decree – not because they prevailed in the particular enforcement proceeding to which their monitoring work related. The motion for attorney's fees is not time-barred.

The FBI's estoppel argument fails for the same reason. According to the FBI, in seeking an order compelling service before Judge Williams, plaintiffs urged that "the Court should eschew any consideration of the effect a decision on service might have on a fee petition because no such petition was pending and therefore such consideration would be purely advisory." (*Id.* at 8) The FBI argues that plaintiffs therefore "should be estopped from now asserting that the order they procured on that representation has some bearing on their fee petition." (*Id.*) Even assuming that the FBI has accurately characterized plaintiffs' earlier representation to the court – which is no small assumption, from the court's reading of the briefs – plaintiffs' current fee petition is based on their success in securing the underlying consent decree, not on their success in procuring the service order. The court will not estop plaintiffs from bringing the current fee

2

petition.

The *Alliance* plaintiffs contend that the Magistrate Judge ignored the law of the case in finding that they were not parties to the Arab-American enforcement proceeding. In allowing the ACLU to participate in summary judgment proceedings between the FBI and Chicago CISPES, the court held that "[a]s a contracting party, the ACLU is aggrieved by every violation or threatened violation of the contract, and therefore has [the] right to participate in these proceedings to enforce the decree." *Alliance to End Repression v. City of Chicago*, Nos. 74 C 3268, 75 C 3295, 1991 WL 206056, at *12 n.3 (Oct. 3, 1991). The reasoning underlying this holding renders it equally applicable to the *Alliance* plaintiffs in this context. Their blanket right to act as "parties" to enforcement proceedings would be eviscerated if they were not treated as "parties" for purposes of recovering attorney's fees to which they would otherwise be entitled.

The FBI contends that this holding is not the law of the case because the order in which it was set forth was reversed by the Seventh Circuit. *See Alliance to End Repression v. City of Chicago*, 119 F.3d 472 (7th Cir. 1997). However, the Seventh Circuit's reversal of the district court's fee award was not based in any way on the ACLU's right to participate in the proceedings. Indeed, the Seventh Circuit allowed the ACLU to participate in the appeal without making an issue of it. *See id.* More importantly, however, there is no indication that the FBI appealed the district court's grant of blanket participatory rights to the ACLU.

Contrary to the FBI's suggestion, the mere fact that other rulings set forth in the district court's opinion were reversed does not preclude non-appealed rulings in the same opinion from functioning as the law of the case. "Under the doctrine of the law of the case, a ruling by the trial court, in an earlier stage of the case, that could have been but was not challenged on appeal is binding in subsequent stages of the case." *Schering Corp. v. Illinois Antibiotics Co.*, 89 F.3d

3

357, 358 (7th Cir. 1996); *see also Williams v. Commissioner of Internal Revenue*, 1 F.3d 502, 503 (7th Cir. 1993) ("If a final judgment had been entered, the case appealed, the judgment reversed, and the case remanded, the trial judge would be required to adhere on remand to the rulings that he had made before the case was first appealed, provided of course that they had not been set aside by the appellate court.").

Accordingly, the court finds that under the law of the case, the *Alliance* plaintiffs, as contracting parties, were "parties" to the ACLU's enforcement proceeding.[1] This determination, of course, does not end the inquiry, for plaintiffs' mere status as parties to an enforcement proceeding does not entitle them to attorney's fees. Indeed, under plaintiffs' framing of the issues, their status as parties to the enforcement proceeding is irrelevant to the inquiry.[2]

Plaintiffs bring their current fee request under 42 U.S.C. § 1988 and 28 U.S.C. § 2412. (Pls.' Supp. Br. at 3) Only in combination do these statutes provide a potential basis for fee recovery against the federal government. Section 1988 does not waive the federal government's sovereign immunity, but provides only that in an action to enforce various statutory provisions, including § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 1988(b).

Through 28 U.S.C. § 2412, as amended by the Equal Access to Justice Act, Pub. L. 96-481, 94 Stat. 2325 (1980), the United States has partially waived its sovereign immunity. The

---

[1] To the extent that the FBI contends that plaintiffs do not satisfy the definition of "party" provided by 28 U.S.C. § 2412(d)(2)(B), it bears noting that plaintiffs' fee petition is based on § 2412(b). The definitions set forth in § 2412(d) apply only to that subsection. *See* 28 U.S.C. § 2412(d)(2).

[2] In finding that the *Alliance* plaintiffs, as contracting parties, are parties to enforcement actions brought under the consent decree, the court makes no determination as to whether they were *prevailing* parties in the Arab-American enforcement proceeding. Given that they did not participate in the resolution of the proceeding or sign the resulting settlement agreement, the court is skeptical that the *Alliance* plaintiffs can be said to have prevailed.

section under which plaintiffs seek recovery of their attorney's fees provides that:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b). Thus, if plaintiffs are otherwise entitled to attorney's fees under § 1988, the EAJA allows them, at least in theory, to recover such fees from the FBI.

In construing the EAJA, this court must bear in mind that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276 (1957). The *Alliance* plaintiffs, in seeking to recover their litigation costs, bear the burden of establishing that they meet the EAJA's requirements. *See Estate of Woll v. United States*, 44 F.3d 464, 470 (7th Cir. 1994).

Plaintiffs' primary obstacle to recovery stems from the fact that the EAJA applies only to matters that were pending on, or commenced after, its effective date – October 1, 1981. *Commissioners of Highways v. United States*, 684 F.2d 443, 444 (7th Cir. 1982). As Judge Getzendanner previously observed, plaintiffs and the federal defendants (including the FBI) entered into the underlying settlements – which gave rise to the consent decree – in late 1980. The court approved the settlements on August 11, 1981, and judgment was entered on September 2, 1981. *Alliance to End Repression v. City of Chicago*, Nos. 74 C 3268, 75 C 3295, 76 C 1982, 1985 WL 3300, at *6 (N.D. Ill. Oct. 24, 1985).

Before Judge Getzendanner, plaintiffs attempted to circumvent the impact of this chronology by arguing that the case was still "pending" because their petition for attorney's fees

5

was still pending as of the EAJA's effective date, and because the statutory time period for appealing had not expired as of that date. Judge Getzendanner properly rejected both arguments. First, she recognized that the Seventh Circuit had "held that a case is no longer 'pending' for purposes of the EAJA when the sole issue remaining on the effective date of the Act is the collateral issue of the federal government's liability for fees." *Id.* at *7 (citing, *inter alia*, *Commissioners of Highways*, 684 F.2d at 444-45). Second, Judge Getzendanner held that the statutory time period for appealing was irrelevant because "judgment was by consent decree, and neither party had standing to appeal." *Id.* As a result, "the September 2, 1981 order was final in all senses of the word," and thus there "is no authorization for the imposition of fees under the EAJA." *Id.*

Plaintiffs now seek to circumvent Judge Getzendanner's ruling by arguing that the EAJA is applicable because "all of the work for which compensation is now being sought commenced long after the effective date of the Act." (Pls.' Supp. Br. at 3) This argument is irrelevant, for the EAJA's applicability is determined by the timing of the underlying action, not the timing of the work for which fees are sought. *See Berman v. Schweiker*, 713 F.2d 1290, 1296-97 (7th Cir. 1983) (holding that EAJA covers "work performed before and after the effective date of the Act as long as the action was pending on October 1, 1981 or was commenced on or after that date").

More broadly, according to plaintiffs, the fact that "fees for the case-in-chief were precluded because the case-in-chief was no longer pending when the fee statute became effective does not mean that a plaintiff is ineligible for postjudgment work commencing after the fee statute became effective." (Pls.' Supp. Br. at 3) As support for this proposition, plaintiffs cite *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 620-21 (4th Cir. 1978), in which the Fourth Circuit upheld an award of attorney's fees stemming from the plaintiff's successful attempts to

modify an earlier school desegregation order. The *Wheeler* court's analysis focused on the availability of fees under § 718 of the Emergency School Aid Act of 1972, 20 U.S.C. § 1617 (now repealed), but the court observed that "it makes no difference whether plaintiffs base their claim on 20 U.S.C. § 1617 or on 42 U.S.C. § 1988" because both statutes "provide for an award of a reasonable attorney's fee to the prevailing party," and "there is no indication that Congress intended the language of the two statutes to be interpreted differently." *Id.* at 621. The court further observed that "[b]oth have been construed to authorize fee awards in cases pending at the date of enactment." *Id.*

The *Wheeler* plaintiffs were attempting to recover attorney's fees for their work dating back to the beginning of the desegregation litigation, even though the fee statute had not been enacted at that time. The plaintiffs argued that, since the court retained jurisdiction to enter further orders necessary to carry out the underlying desegregation order, the case was still "pending" for purposes of determining the fee statute's applicability. The court rejected this argument:

> When § 1617 became effective on July 1, 1972, this case was pending only in the technical sense that jurisdiction to enter such further orders as were necessary and desirable had been retained. There was no certainty, however, that the jurisdiction of the court would ever again be exercised. Indeed, the litigation might have remained inactive for years. Although the legislative history of § 1617 is silent as to the definition of pending claims, we doubt that Congress intended the availability of attorneys' fees to depend solely on the technical retention of jurisdiction. . . . We therefore hold that § 1617 does not authorize attorneys' fees with regard to those phases of the litigation that had been reduced to a final judgment at the time § 1617 became effective.

*Id.* at 623.

The *Wheeler* court went on to hold, however, that the plaintiffs could recover attorney's fees for their work on phases of the litigation that began after the fee statute's effective date. "As we view § 1617, it authorizes an award of attorneys' fees only for services in connection with the

7

phase of the litigation that commenced with the filing of a motion for further relief in July, 1972." *Id.* Significantly, the *Wheeler* plaintiffs prevailed on their July 1972 motion. *See id.* at 620. Indeed, the appellate court instructed the district court that, on remand, the extent to which the plaintiffs prevailed was a factor to be considered in computing the amount of fees to be awarded. *See id.* at 624.

To the extent that the *Alliance* plaintiffs are relying on *Wheeler* to argue that they are eligible for attorney's fees for postjudgment work on which they prevail, the court readily agrees with their position. When plaintiffs file and prevail on a petition to enforce the consent decree, the effective date of the EAJA is no obstacle to their recovery of attorney's fees. However, to the extent that plaintiffs are relying on *Wheeler* to argue that they are entitled to recover attorney's fees for postjudgment work unrelated to a matter on which they prevail, the court cannot discern support for that proposition in *Wheeler*'s holding or analysis.

More fundamentally, plaintiffs' argument devolves into self-defeating circular logic. Plaintiffs contend that the EAJA applies to their current fee petition because they performed the underlying work after the Act's effective date. However, the EAJA only allows plaintiffs to recover fees from the United States "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b). The basis on which plaintiffs seek fees, § 1988, allows for recovery only by a "prevailing party." 42 U.S.C. § 1988(b). Because plaintiffs do not claim to be prevailing parties in this postjudgment work, fees would appear to be precluded.

In attempting to overcome the "prevailing party" obstacle, plaintiffs circle back to rely on the pre-EAJA consent decree. Plaintiffs argue that they need not have prevailed in the postjudgment work for which they seek compensation because they "obtained their 'prevailing'

8

status by obtaining the FBI consent decree" in the first place. (Exh. 24 to Pls.' Objections at 5) This argument ignores the fact that, as Judge Getzendanner already held, the consent decree is not governed by the EAJA. If the consent decree is not governed by the EAJA, the court does not believe that it can provide the basis for plaintiffs' fee recovery under the EAJA. As noted above, the EAJA's applicability hinges on the timing of the underlying action, not the timing of the work for which fees are sought. Accordingly, while a party may recover pre-EAJA fees based on post-EAJA litigation, *see Berman*, 713 F.2d at 1296-97, plaintiffs have provided no support for the notion that they may recover post-EAJA fees based on pre-EAJA litigation. Because plaintiffs' claimed entitlement to fees is based solely on their "prevailing party" status in a pre-EAJA action,[3] the court denies their fee petition.

Plaintiffs insist that the EAJA "is as applicable to this attorney's fee request as it was to the request for fees against the FBI for the CISPES enforcement proceeding." (Pls.' Supp. Br. at 4) In the CISPES enforcement proceeding, Judge Williams adopted Magistrate Judge Lefkow's recommendation that the plaintiffs be awarded attorney's fees because "the FBI had engaged in 'serious intentional non-compliance' with the 1981 consent decree." (9/5/96 R&R at 2 (quoting *Alliance to End Repression*, 1991 WL 206056, at *10)) Judge Williams had awarded the fees based on the court's "inherent power to impose sanctions for violations of its decrees" after finding that "the FBI violated the decree." 1991 WL 206056, at *12. Judge Williams also "reject[ed] the FBI's argument that petitioners ha[d] not prevailed" on the enforcement petition. *Id.*

The CISPES enforcement proceeding does not support plaintiffs' argument here. First,

---

[3] Specifically, plaintiffs assert that they "never sought fees as prevailing parties in the [Arab-American] enforcement proceeding," but that they "gained 42 U.S.C. § 1988 prevailing party status when they and ACLU Plaintiffs won the FBI consent decree." (Pls.' Objections at 7)

9

the court notes that the award of fees was vacated by the Seventh Circuit. *See Alliance to End Repression v. City of Chicago*, 119 F.3d 472, 477 (7th Cir. 1997) (vacating award of fees under § 2412(b) because plaintiffs "are no longer prevailing parties" in light of ruling that FBI did not violate consent decree). More importantly, nothing in Judge Williams' or Magistrate Judge Lefkow's analyses suggests that the EAJA allows plaintiffs to recover fees for postjudgment work based on their status as prevailing parties under the pre-EAJA consent decree. In the CISPES proceeding, Judge Williams based the fee award on the plaintiffs' success in establishing a violation of the consent decree, not on their success in entering into the decree in the first place. This court does not dispute plaintiffs' ability to recover fees for postjudgment work in which they are prevailing parties. Such is not the case here.

## Conclusion

Because the court believes that the above analysis precludes the award of attorney's fees to the *Alliance* plaintiffs for their work relating to the Arab-American enforcement proceeding, the court does not reach the other arguments raised by the parties. The *Alliance* Plaintiffs' Attorney's Fees Motion for Monitoring Compliance With FBI Consent Decree is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: May 25, 2000