# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 74 C 3268 & 75 C 3295 | **DATE** | 9/20/2000 |
| **CASE TITLE** | ALLIANCE TO END REPRESSION, et al vs. CITY OF CHICAGO, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The objections to the Magistrate Judge's March 9, 2000 Report and Recommendation filed by Petitioner Raymond Risley and the *Alliance* Plaintiffs are granted in part and denied in part. Risley's Petition to Enforce the City of Chicago Consent Decree is dismissed. The original Memorandum Opinion and Order is filed in Case No. 74 C 3268.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 2 1 2000 | |
| ✓ | Notified counsel by telephone. | date docketed | 3294 |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING 00 SEP 21 AM 7:35 | |
| | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

ALLIANCE TO END REPRESSION, et al.,

    Plaintiffs,

v.

CITY OF CHICAGO, et al.,

    Defendants.

No. 74 C 3268
75 C 3295

Judge Joan B. Gottschall

## MEMORANDUM OPINION AND ORDER

Petitioner Raymond Risley and the *Alliance* plaintiffs object to Magistrate Judge Bobrick's March 9, 2000 recommendation that Risley's petition to enforce the City of Chicago consent decree be dismissed. Risley served as a high-ranking Chicago police officer from 1991 to 1999. Risley's petition alleges that police department officials blamed him for certain leaks to the media during an investigation into police corruption. He alleges that the police department violated the consent decree in two ways: first, by investigating his activities without following the decree's requirements; and second, by retaliating against him because of his First Amendment activities. The Magistrate Judge recommended that the petition be dismissed because it is untimely, because the petition's allegations lack credibility, and because Risley did not engage in any First Amendment conduct. The court agrees with the Magistrate Judge's conclusion that a two-year statute of limitations should govern enforcement actions under the consent decree, but disagrees with his conclusion that Risley's entire petition is time-barred. The court finds, however, that the allegations that are not time-barred do not set forth a consent decree violation.

3294

In *Smith v. City of Chicago*, 769 F.2d 408, 413 (7th Cir. 1985), the court held that Title VII's 180-day limitations period applies to contempt proceedings brought under the Shakman decree – a consent decree governing the use of political patronage in the City's employment practices. Contrary to Risley's and the *Alliance* plaintiffs' characterizations, the *Smith* court did not suggest that the borrowing of limitations periods was appropriate only where litigation over laches defenses has become a recurring problem. While recognizing that "[l]itigation about laches in Shakman cases has become routine business in the district court," *id.* at 410, and that it "diverts time and energy from the central issue in the litigation," the reasoning underlying the court's holding was significantly broader:

> The litigants and the legal system . . . have a common interest in easily stated, easily applied rules of procedure. Bright-line rules save the time of litigants and courts for the merits of the disputes; they tell parties what they must do to protect their rights. Courts should establish understandable, simple rules for the timely filing of litigation *whenever possible*. . . . Laches is not the doctrine of choice for determining the outer limit within which to file suit. Its usual role is to terminate the right to sue someplace short of the period of limitations, when inexcusable delay coupled with prejudice makes the regular period too long. Yet laches has so far been the only device for determining the timeliness of litigation under the Shakman decree. The time has come to establish a period of limitations.

*Id.* at 411 (emphasis added).

Although litigation under the consent decree in this case has proceeded without devoting much (if any) time to laches, the court nevertheless believes that a defined limitations period is essential -- both to prospective petitioners and to the City. Parties who suffer harm as a result of the City's decree violations should face a discernible deadline for bringing their actions. As the *Smith* court recognized, "[i]f no clear rule establishes how much delay is permissible . . . injured

2

employees must either forswear their less contentious remedies or risk losing their legal rights."
*Id.* The City also should be able to rely on a defined period of time in which alleged infractions of the consent decree must be raised. Risley's fear that a limitations period is inappropriate because many of the City's violations involve "covert action" is misplaced. If a prospective petitioner should not reasonably have been on notice of the violation, or if the City took action to conceal the violation, the statute of limitations will not run. Where, however, a person is aware of the conduct giving rise to the alleged violation, there is no reason not to enforce a reasonable limitations period.

The court agrees with the Magistrate Judge that the two-year limitations period governing § 1983 claims should apply to enforcement actions under the consent decree. The claims giving rise to the decree were brought under § 1983, and many of the enforcement petitions closely track claims brought under that statute. Admittedly, the fit is not perfect, as the consent decree gives petitioners a freestanding cause of action without needing to invoke a particular statute or common-law right. Nevertheless, the First Amendment lies at the heart of the consent decree, and alleged violations of the decree are most analogous to First Amendment violations that would otherwise be actionable under § 1983. The court does not believe that borrowing the shorter limitations periods governing employment disputes, as the *Smith* court did, would be appropriate here given that many enforcement petitions will arise outside the employment context. At the other extreme, the court rejects Risley's conclusory call for a limitations period of five to ten years. While Risley contends that such a lengthy period would be consistent with the record-keeping requirements of the Chicago Police Department, that is hardly a sturdy ground

on which to base a statute of limitations. A plaintiff cannot reasonably expect to be allowed to bring suit for as long as the defendant maintains the relevant records.

The allegations set forth in Risley's complaint establish that he was on notice of the City's investigation of him in 1996. In February of that year, he learned that his telephone records had been subpoenaed. In the early summer, he learned that a member of the Internal Affairs Department told two officers that Risley was a member of the Greek Mafia. On October 24, 1996, Risley's wife – also a member of the Chicago Police Department – was questioned by Internal Affairs, which sought to learn whether Risley was communicating with the media and/or cooperating with a federal probe. During the questioning, she was ordered to answer questions about private conversations with Risley. Because Risley waited until October 25, 1999 to bring this action, and because the only allegation relating to his unlawful investigation claim that falls within the limitations period does not constitute a consent decree violation, the claim is time-barred.

Risley's half-hearted attempt to invoke a "continuing violation" theory – based on the running of his license plate by a member of the Chicago Police Department on August 26, 1999 (Petition ¶ 114) – is unconvincing. "If [a plaintiff] knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed him, he may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one." *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993).

While the running of the license plate itself occurred within the limitations period, that

single allegation is insufficient to state a claim for an unlawful investigation within the meaning of the consent decree. Risley does not explain how running his license plate number was directed toward First Amendment conduct, nor how the method employed by the police in doing so violated the decree's terms. To fall within the decree's procedural requirements, the investigative activity must fall within one of three categories: first, it may "include the collection or handling of information about First Amendment conduct"; second, it may "have as a subject or target a person who is actively and substantially engaged in First Amendment conduct, where the investigative activity relates to that conduct"; or third, it may "interfere with First Amendment conduct." (Consent Decree § 1.3)

None of these categories apply here. First, Risley's license plate number does not constitute information about First Amendment conduct. Second, Risley does not suggest how running his license plate relates to leaks that allegedly occurred years before. Finally, given that Risley was not even a member of the Chicago Police Department at the time, the petition fails to indicate how running his license plate interfered with his First Amendment conduct. The decree also prohibits the City from investigating a person solely because of his First Amendment conduct. (Consent Decree § 2.1) Again, Risley fails to indicate how running the license plate from his Country Club Hills Police Department vehicle in 1999 relates to the alleged Chicago Police Department leaks in 1995.

While the Magistrate Judge's statute of limitations analysis was accurate, it was applied with too broad of a brush. Risley's demotion occurred in August 1998. As the City itself concedes, Risley's retaliation claim is based on conduct occurring within the two-year limitations

period, and therefore is not time-barred. It does, however, suffer from a substantive flaw.

The court agrees with the *Alliance* plaintiffs and the ACLU that the consent decree's requirements are not limited to investigations of conduct that is, in fact, First Amendment conduct. The decree is broader, governing investigative activity that "does *or foreseeably will*" include the collection of information about First Amendment conduct, target a person engaged in First Amendment conduct where the investigation relates to that conduct, or interfere with First Amendment conduct. (Consent Decree § 1.3) When it comes to Risley's retaliation claim, however, the decree's scope narrows. The decree provides that the City may not "disrupt, interfere with or harass any person because of the person's First Amendment conduct." (Consent Decree § 2.2) Significantly, the decree does not prohibit disruption, interference with or harassment based on *perceived* First Amendment conduct.

Risley repeatedly alleges that the City's investigation and retaliation was based on its *mistaken* belief that Risley leaked information to the media. (*See* Petition ¶ 2 (spying based on Risley's perceived exercise of First Amendment rights), ¶ 70 (another officer leaked information for *Southtown Economist* article), ¶ 107 (City mistakenly believed Risley exercised First Amendment rights) ¶ 110 (City's claim that Risley leaked the information leading to superintendent's resignation was false)) Nowhere in the petition does Risley allege that the City retaliated against him for a communication with the media that actually occurred. The consent decree does not provide a remedy for City actions arising from anti-First Amendment motivations unless those actions disrupt, interfere with, or harass a person because of the person's actual First Amendment conduct. Risley's after-the-fact insistence that he did engage in

some First Amendment conduct by talking to the press at other times is besides the point; he alleges in his petition that the City's retaliation was based on the leak of information relating to particular investigations, not on his general press contacts. Risley's retaliation claim fails. This action is dismissed.

## Conclusion

For the above reasons, Risley's petition to enforce the consent decree is dismissed.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: September 20, 2000