Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 74 C 3268 & 75 C 3295 | **DATE** | October 31, 2000 |
| **CASE TITLE** | Alliance to End Repression v. City of Chicago - 74 C 3268<br>American Civil Liberties v. City of Chicago - 75 C 3295 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The *Alliance* plaintiffs are awarded $43,644.93 in attorneys' fees for monitoring and enforcing compliance with the FBI consent decree. Original Memorandum Opinion and Order is filed in case 74 C 3268.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 2, 2000 | |
| | Notified counsel by telephone. | NOV 02 2000 date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | 00 NOV -1 AM 10: 57 | 3295 |
| | courtroom deputy's initials | | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ALLIANCE TO END REPRESSION, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Nos. 74 C 3268 |
| ) | 75 C 3295 |
| ) | |
| CITY OF CHICAGO, et al., ) | Judge Joan B. Gottschall |
| ) | |
| Defendants. ) | |

DOCKETED
NOV 0 2 2000

## MEMORANDUM OPINION AND ORDER

After establishing their entitlement to attorneys' fees, *see Alliance to End Repression v. City of Chicago*, Nos. 74 C 3268, 75 C 3295, 2000 WL 1367999 (N.D. Ill. Sep. 21, 2000); *Alliance to End Repression v. City of Chicago*, Nos. 74 C 3268, 75 C 3295, 2000 WL 709482 (N.D. Ill. May 26, 2000), the *Alliance* plaintiffs have submitted a breakdown of the fees they believe are recoverable. In addition to challenging the amount of attorneys' fees sought by plaintiffs, the FBI argues once again that plaintiffs are not entitled to any fees whatsoever. The FBI contends that the fee petition is untimely under Local Rule 54.3(b), which provides that a fee motion "shall be filed and served no later than 90 days after the entry of the judgment or settlement agreement on which the motion is founded." According to the FBI, the judgment or settlement on which plaintiffs' fee petition is founded "is indisputably the February 17, 1995 Stipulation and Order resolving the ACLU's enforcement petition." (Resp. at 4) Because the fee petition was not filed until April 11, 1996, the FBI contends that it is untimely.

The court has already rejected this argument once, ruling that the fee request is not untimely because it is based on plaintiffs' status as a prevailing party in the underlying consent

decree litigation and their monitoring of compliance with that decree, not on the settlement reached in the Arab-American enforcement proceeding. The FBI asserts that "the Local Rule does not focus on the status of the party requesting fees, or on the basis of the fee request. Rather, it provides a time limit based on the termination of the proceeding on which the fee request is based." (Resp. at 5) According to the FBI, plaintiffs concede in their original motion for fees that their claim is based on the Arab-American enforcement proceeding. In reality, the portion of the brief cited by the FBI merely states that the *Alliance* plaintiffs "are now seeking attorney's fees for monitoring the FBI's compliance with the consent decree as to two matters" – the Arab-American enforcement proceeding and the litigation resulting from the FBI's refusal to serve the *Alliance* plaintiffs with pleadings in the Arab-American enforcement proceeding. (Fee Motion at 2) There is nothing to suggest that plaintiffs seek fees for their success in the Arab-American enforcement proceeding, rather than for monitoring work stemming from their success in the consent decree litigation. Because the fee request is based not on a judgment or settlement, but on post-judgment monitoring work, Local Rule 54.3(b) does not govern.

The court also finds no basis for the FBI's fear that plaintiffs "could now request fees for work performed years ago," and that a fee recovery here "would only encourage their counsel to parse the record of two decades for enforcement petitions on which he could base claims for fees." (Resp. at 5) Such a strategy would find a substantial obstacle in the doctrine of laches. That said, the FBI's conclusory suggestion that laches bars the current fee petition is unconvincing, as no attempt has been made to establish an unreasonable lack of diligence or resulting prejudice. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999).

The FBI next argues that plaintiffs have failed to show that the work for which they seek

compensation was reasonably necessary to the achievement of benefits sought under the consent decree. The FBI contends that plaintiffs' submissions – listing the hours worked, the general category of the hours, and a brief description of the work – does not allow the court to determine whether the work was part of reasonable monitoring efforts. The court agrees that plaintiffs have not established the compensability of some of their requested fees. For other fees, however, the court finds plaintiffs' descriptions to be sufficient.

The first fee category stems from the FBI's refusal to serve the *Alliance* plaintiffs with pleadings in the Arab-American enforcement proceeding. The court has recognized that the *Alliance* plaintiffs – as signatories to the consent decree – are to be considered parties to every enforcement action brought under the decree. Being provided with copies of court pleadings regarding the consent decree is a fundamental requirement for effective monitoring of consent decree compliance. While the court will not reimburse the *Alliance* plaintiffs for work that duplicates the ACLU's work, that does not mean that they can be cut off from all knowledge of decree-related disputes. Given that their own rights to service were at issue, it would not have made sense for the *Alliance* plaintiffs to defer to the ACLU in pressing this issue; further, judging from their submission of two different proposed service orders, the plaintiff groups did not hold identical views on the matter. Ensuring their rights to service – through the court's eventual adoption of their proposed standing order on service – was reasonably necessary to securing the benefits of the consent decree, and the resulting fees are recoverable.

The fees sought for work relating to the Arab-American enforcement proceeding are more problematic. The bulk of plaintiffs' work in that proceeding relates to their filing of a response to the FBI's objections to the Magistrate Judge's report and recommendation. The objections

3

were never ruled on because the ACLU and FBI settled the matter after the Magistrate Judge's report was issued. Plaintiffs fail to indicate whether the settlement came before the response brief was filed; if it did, the *Alliance* plaintiffs should have inquired as to whether the dispute was still live before submitting a response. Given that the ACLU did not file a response brief, it seems likely that settlement had already been reached when the *Alliance* plaintiffs submitted their response. If the ACLU refused to answer the *Alliance* plaintiffs' inquiries about the dispute, then perhaps plaintiffs were justified in their ignorance of the settlement. Because they give no basis on which the court could reach that conclusion, however, the court cannot find that their response brief was reasonable and necessary.

Plaintiffs' other work related to the Arab-American enforcement proceeding consists generally of "studying" papers prepared by the ACLU, the FBI, and the court. While the court readily acknowledges that counsel for the *Alliance* plaintiffs should make an effort to keep abreast of disputes related to the consent decree, the court does not believe that the FBI must bear the financial burden of those efforts. Under plaintiffs' approach, the FBI would pay whenever plaintiffs' counsel decides to read a brief relating to an enforcement action, regardless of whether plaintiffs even have a direct role in that action. The FBI must pay for plaintiffs' reasonable and necessary costs of monitoring actual compliance, but not for the costs of keeping abreast of disputes about allegations of non-compliance. In this regard, there is a crucial distinction between the fees sought for the service dispute and the fees sought for reviewing pleadings in the Arab-American action: in the former case, the FBI was attempting to prevent plaintiffs from gaining knowledge of non-compliance allegations; in the latter case, plaintiffs were simply reviewing those allegations.

The last category of fees sought stems from work related to the instant fee dispute. Given the tortuous route of this fee petition, these fees have ballooned to an extent that they now dwarf the amounts sought for the underlying work. Plaintiffs' initial fee request was only $19,371.40 representing 71.62 hours of work: 35.03 hours winning the service order, 31.66 hours "regarding" the Arab-American enforcement proceeding, 4.93 hours for the fee petition, and $34 in expenses. After years of litigating the issue, the amount requested now stands at over $85,000. That is not to say that the FBI's opposition to the fee request renders it entirely blameworthy. As shown above, a significant portion of the fee request was, in this court's view, unrecoverable.

While hours worked in pursuit of recoverable fees are themselves recoverable, the substance of plaintiffs' fee breakdown is skewed far too heavily toward hours related to the fee dispute, rather than hours spent ensuring compliance with the consent decree. The court does not find it appropriate under the circumstances to award $67,000 for hours spent pursuing $9,000 in recoverable fees. At the same time, plaintiffs cannot reasonably be expected to bear the entire cost of the FBI's intransigence. Given the degree of merit to the fee petition and the opposition presented by the FBI, the court finds that one-half of the hours worked on the fee recovery are compensable.

The FBI also contends that the hourly rate of compensation sought by plaintiffs' counsel is excessive, and argues that the rate must be "based on evidence of actual fees charged to actual clients, or of rates similarly experienced attorneys in the community charge paying clients for similar services." (Resp. at 9) Plaintiffs have requested compensation using an hourly rate calculated under a framework previously approved in this litigation by Judge Williams. Given the complexity and scope of this litigation, the court believes the existing framework's reliance

on rates charged by partners at large Chicago law firms is suitable for determining the recoverable hourly rate. Given counsel's expertise and experience, the court finds that the requested hourly rates – ranging from $250 in 1994 and 1995 to $320 in 1999 and 2000 – are entirely reasonable. The court is not convinced that the established framework needs to be abandoned at this stage of the litigation, and will calculate plaintiffs' fee recovery based on the requested rates.

In total, the court awards the *Alliance* plaintiffs $43,644.93 in attorneys' fees. This amount consists of $34,162.48 for 108.78 hours of work performed by Richard Gutman on the fee recovery (1.25 hours at $250 per hour (1994-95), 9.935 hours at $265 per hour (1996), .33 hours at $280 per hour (1997), and 97.265 hours at $320 per hour (1999-2000)); $9106.20 for 36.41 hours of work performed by Gutman related to the litigation over service; and $376.25 for work done by Lawrence Jackowiak related to the fee dispute (one-half of the 4.3 hours claimed at $175 per hour). The court rejects plaintiffs' request for $267.85 in expenses, as there has been no showing that the costs were necessary to monitoring compliance with the decree.

## Conclusion

For the above reasons, the *Alliance* plaintiffs are awarded $43,644.93 in attorneys' fees for monitoring and enforcing compliance with the FBI consent decree.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: October 31, 2000